1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SEYMOUR ISAAC,

11            Plaintiff,                        No. CIV S-07-0442 GGH

12        vs.

13
     MICHAEL J. ASTRUE,                         ORDER
14   Commissioner of
     Social Security,
15
              Defendant.
16   _____/

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

19   ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons that follow,

20   plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for

21   Summary Judgment is GRANTED, the Clerk is directed to enter judgment for the

22   Commissioner.

23   BACKGROUND

24            Plaintiff, born June 9, 1971, applied for disability benefits on March 20, 2002.

25   (Tr. at 86.)  Plaintiff alleged he was unable to work since March 17, 1999, due to knee problems

26   and schizophrenia.  (Tr. at 86, 12.)  On March 20, 2004, ALJ Mark Ramsey found plaintiff not

                                                1

disabled.  (Tr. at 39-45.)  The Appeals Council remanded on September 13, 2004 for vocational testimony.  In a second decision dated April 26, 2005, ALJ Ramsey again determined plaintiff was not disabled.[1]  The ALJ made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since March 17, 1999.
>
> 2.  The medical evidence establishes that the claimant has severe bilateral knee osteoarthritis, status post-right anterior cruciate ligament tear, asthma, hypertension, borderline intellectual functioning, and antisocial personality disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3.  The claimant's testimony generally that he is disabled from all work or that he cannot stand, walk, sit, lift and carry or otherwise perform the work-related functions found here, are not credited for the above-stated reasons.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.   The claimant has the residual functional capacity to
     perform the non-exertional requirements of work including
     lifting and carrying from 10 pounds frequently to 20 pounds
     occasionally, sitting for 6 of 8 hours, standing for 2 of 8
     hours, occasionally squatting and crawling, and he must
     avoid more than moderate exposure to dust and fumes and
     similar environmental irritants, jobs requiring left eye
     vision, or more than simple unskilled work involving little
     public contact.  (20 CFR § 416.945).

5.   The claimant is unable to perform his past relevant work as
     a security guard.

6.   The claimant's residual functional capacity for the full
     range of sedentary and light work is reduced by the
     limitations indicated above.

7.   The claimant is 33-years old, which is defined as a younger
     individual (20 CFR § 416.963).

8.   The claimant has a limited education (20 CFR § 416.964).

9.   The claimant does not have any acquired work skills which
     are transferable to the skilled or semi-skilled work activities
     of other work (20 CFR § 416.963).

10.  Although the claimant's exertional limitations do not allow
     him to perform the full range of sedentary and light work,
     using the Medical-Vocational Guideline as a framework for
     decision-making, there are a significant number of jobs in
     the national economy which he could perform.  Examples
     of such jobs are: electronics assembly, office helper, and
     route clerk.

11.  The claimant was not under a "disability," as defined in the
     Social Security Act, at any time through the date of this
     decision (20 CFR § 416.920(f)).

(Tr. at 21-22.)

ISSUE PRESENTED

Plaintiff has raised the following issue: Whether the ALJ Failed to Properly Frame

the Hypothetical to the Vocational Expert Regarding Plaintiff's Educational Limitations and His

Antisocial Personality Disorder, and Whether the Expert Failed to Consider Plaintiff's Borderline

Intelligence When He Opined Plaintiff Could Perform Certain Jobs.

\\\\\

1    LEGAL STANDARDS

2           The court reviews the Commissioner's decision to determine whether (1) it is

3    based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4    the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5    Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

6    Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

7    accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

8    1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

9    (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

11   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

14   ANALYSIS

15         A.  Whether the Vocational Findings Were Supported by Substantial Evidence

16           Plaintiff takes issue with the ALJ's hypothetical and work that the vocational

17   expert found plaintiff could perform, in light of his limited intelligence and his antisocial

18   personality disorder.

19           Hypothetical questions posed to a vocational expert must include all the

20   substantial, supported physical and mental functional limitations of the particular claimant.

21   Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d

22   789, 793 (9th Cir.1997).  If a hypothetical does not reflect all the functional limitations, the

23   expert's testimony as to available jobs in the national economy has no evidentiary value.

24   DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  But see Thomas v. Barnhart, 278 F.3d

25   947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE

26   had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all

4

1    limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by

2    other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions,

3    based on alternate interpretations of the evidence, substantial evidence must support the

4    hypothetical which ultimately serves as the basis for the ALJ's determination.  Embrey v. Bowen,

5    849 F.2d 418, 422 (9th Cir. 1988).[2]

6              First, plaintiff claims that he cannot perform the jobs of office helper, electronics

7    worker, or routing clerk because they require General Educational Development (GED)

8    reasoning, mathematical and language levels of 2, because he cannot follow detailed instructions

9    but only simple instructions, and has borderline intelligence with an IQ of 72.

10             The hypothetical posed to the expert which was relied on by the ALJ for his

11   findings included the following limitations: stand/walk for two hours, lift 10 pounds frequently

12   and 20 pounds occasionally, occasionally squat and crawl, avoid moderate exposure to fumes,

13   odors, dusts, gas, poor ventilation, simple unskilled work, little peer or public contact, and vision

14   in one eye that is corrected.  (Tr. at 526-28.)  The expert responded that plaintiff could do the

15   aforementioned jobs.  (Id. at 526-27.)

16             All three jobs require reasoning level of 2 and a language level of 2.  The jobs of

17   office helper and routing clerk require a math level of 2 while the job of electronics worker

18   requires a math level of 1.  See DICOT 726.687-010; 239.567-010; 222.687-022.[3]

19   \\\\\

20   \\\\\

21   _____

22   [2]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel."  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial

23   evidence or reject them if they are not.  Id. at 756-757.

24   [3]  The vocational expert refers to specific vocational profile ("SVP") of two also; (tr. at 527); however, SVP levels should not be confused with reasoning levels as these are two

25   separate vocational considerations.  SVP levels do not address whether a job involves only simple or less than complex tasks.  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal.

26   2005).

1    Here, the limitation to simple job instructions[4] must be reconciled with the various

2    reasoning levels of the jobs assigned by a vocational expert.  Rather than adhere to a strict

3    construction of what this limitation equates to in terms of reasoning level, this court prefers to

4    follow the well developed reasoning of the Central District in Meissl.  There, the plaintiff was

5    found to be limited to "simple tasks performed at a routine or repetitive pace."  Id. at 982.  The

6    court explained that although the Social Security Regulations contained only two categories of

7    abilities in regard to understanding and remembering instructions, either "short and simple" and

8    "detailed" or "complex,' the DOT had many more gradations for measuring this ability, and there

9    were six gradations altogether.  Id. at 984.  For example, level 2 requires application of

10   "commonsense understanding to carry out detailed but uninvolved written or oral instructions.

11   Deal with problems involving a few concrete variables in or from standardized situations."

12   DICOT, App. C.  The court continued:

13          To equate the Social Security regulations use of the term "simple"
            with its use in the DOT would necessarily mean that all jobs with a
14          reasoning level of two or higher are encapsulated within the
            regulations' use of the word "detail."  Such a "blunderbuss"
15          approach is not in keeping with the finely calibrated nature in
            which the DOT measures a job's simplicity.

16

17   Meissl, 403 F. Supp.2d at 984.

18          Furthermore, the use of the term "uninvolved" along with the term "detailed" in

19   the DOT qualifies it and refutes any attempt to equate the Social Security regulations' use of the

20   term "detailed" with the DOT's use of that term.  Id.  The court found that the plaintiff's RFC

21   must be compared with the DOT's reasoning scale.  A reasoning level of one requires slightly

22   less than simple tasks that are in some sense repetitive.  For example, they include the job of

23   counting cows as they come off a truck.  A reasoning level of two would encompass an RFC of

24   being able to do "simple and routine work tasks."  Id.

25

26          [4] This limitation was based on the report by Dr. Nakagawa.  (Tr. at 289.)

1    The reasoning levels of the jobs which the vocational expert testified that plaintiff

2    could do are not in conflict with the limitation to simple job instructions as described by Dr.

3    Nakagawa.

4    In regard to the ALJ's failure to include plaintiff's borderline IQ[5] in the

5    hypothetical, by limiting plaintiff to simple unskilled work in his hypothetical to the expert, the

6    ALJ "captured the practical consequences of [plaintiff's] low average to borderline intellectual

7    functioning." Hillier v. Social Security Administration, 486 F.3d 359, 366 (8th Cir. 2007).  In

8    that case, plaintiff's IQ was in the 70's and she was found to be low average to borderline

9    intelligence.  The hypothetical limited plaintiff to understanding, remembering and carrying out

10   concrete instructions, and also limited her to simple, concrete work that was semi-skilled or

11   unskilled.  The hypothetical did not set forth her intellectual functioning or that she was

12   functionally illiterate and had poor reading and writing skills.  The court found, nevertheless, that

13   the hypothetical was satisfactory because the limitation to simple concrete work that was

14   unskilled or semiskilled encompassed all of these unstated limitations.[6] Id. at 365-66.

15   The failure to include an express reference to plaintiff's borderline intellectual

16   functioning is not consequential.  England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007).  It is

17   not required that the hypothetical "frame the claimant's impairments in the specific diagnostic

18   terms used in the medical reports, but instead should capture the 'concrete consequences' of

19   those impairments."  Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006), quoting Roe v.

20

21    [5] According to the DSM-IV, an IQ of 72 falls within the borderline range of intellectual functioning which is from 71-84.  Diagnostic and Statistical Manual of Mental Disorders 684 (4th ed.1994).

22

23    [6] See also SSR 85-16 (1984) ("The evaluation of intellectual functioning by a program physician, psychologist, ALJ, or AC member provides information necessary to determine the individual's ability to understand, to remember instructions, and to carry out instructions. Thus, an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision").

7

1   Chater, 92 F.3d 672, 676-77 (8th Cir. 1996) (finding hypothetical not required to "use specific

2   diagnostic or symptomatic terms where other descriptive terms can adequately define the

3   claimant's impairments").  Even were the hypothetical lacking in this respect, plaintiff's attorney

4   questioned the VE about plaintiff's IQ, and the expert testified that plaintiff should be able to

5   perform these jobs which are all level 2.  (Tr. at 528.)  He explained that the electronics worker

6   job, for example, was a "very low electronics assembly working (INAUDIBLE) it's basically just

7   a kind of assembly type work."  (Id. at 528-29.)  Any insufficiency by the ALJ was cured by the

8   attorney and was therefore harmless.  England, 490 F.3d at 1024.

9           The undersigned has closely scrutinized the VE's conclusion that plaintiff could

10   perform at Level 2 given his borderline intellectual functioning (IQ of 72).  Borderline

11   Intellectual Functioning is a differential diagnosis in the DSM IV, which is meant to differentiate

12   this condition from the more profound deficits found in mild mental retardation.  See discussion

13   of such in DSM IV pp 39-46.  The court notes specifically that mild mental retardation IQ falls

14   within the 55-70 range, but even at that level, persons may obtain educational skills up to the

15   sixth grade level.  Id at 41.  Plaintiff, who has an IQ slightly higher than the highest level of mild

16   mental retardation, and who had nearly completed high school, could be found to have skills

17   equivalent with the modest Level 2 skills.  See below.  See also Mental Help.net, article:

18   Adaptive and Borderline Intellectual Functioning in Mental Retardation, August 23, 2006:

19   "People qualifying for a borderline intellectual functioning diagnosis are at a disadvantage when

20   entering stressful and unfamiliar situations, but at the same time function well enough to make it

21   difficult to determine definitively that there is a deficit present requiring assistance."  The court

22   also notes that plaintiff's mental functioning and personality disorder did not preclude him from

23   holding two relatively lengthy security guard positions in the recent past.

24           The court concludes that the ALJ's description of  "simple, unskilled work" in the

25   hypothetical adequately captures plaintiff's borderline intellectual functioning.

26   \\\\\

1    Plaintiff also argues that the ALJ failed to address a conflict between the DOT and

2   the vocational testimony because the mathematical development and language development in

3   the DOT requires substantially higher skills than the basic reading and math skills which the VE

4   testified were sufficient to do these jobs.  Appendix C to the DOT defines level 2 math as "[a]dd,

5   subtract, multiply, and divide all units of measure.  Perform the four operations with like

6   common and decimal fractions.  Compute ratio, rate, and percent.  Draw and interpret bar graphs.

7   Perform arithmetic operations involving all American monetary units."  DICOT, App. C.

8   Language development at level 2 requires:

9              Reading: Passive vocabulary of 5,000-6,000 words.  Read at rate of
              190-215 words per minute.  Read adventure stories and comic
10             books, looking up unfamiliar words in dictionary for meaning,
              spelling, and pronunciation.  Read instructions for assembling
11             model cars and airplanes.
              Writing: Write compound and complex sentences, using cursive
12             style, proper end punctuation, and employing adjectives and
              adverbs.
13             Speaking: Speak clearly and distinctly with appropriate pauses and
              emphasis, correct punctuation, variations in word order, using
14             present, perfect, and future tenses.

15   Id.

16             Plaintiff's argument is without merit as there was no conflict between the DOT

17   and the vocational expert.  Furthermore, the VE specifically stated that he assumed plaintiff had

18   basic reading and math skills, and that they equate to level 2.  (Tr. at 528.)  See Massachi v.

19   Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (failure harmless if no conflict between

20   vocational opinion and DOT or if VE provides sufficient support for conclusion that justifies any

21   potential conflicts).

22             Second, plaintiff claims that because he has antisocial personality disorder, he

23   must have little peer or public contact and therefore cannot do these jobs.  He claims the ALJ's

24   determination that plaintiff will have little problem working and getting along with others does

25   not square with the consultative examiner's opinion that he have little peer or public contact.

26   This argument is also without merit as the ALJ specifically found that plaintiff was limited to

9

1  "simple unskilled work involving little public contact," and this finding properly reflected this

2  limitation.  (Tr. at 21.)

3  <u>CONCLUSION</u>

4        Although this is a close case, and there is no doubt that plaintiff has substantial

5  deficits, including those related to intellectual functioning and personality, they are not so severe

6  so as to preclude all types of work for a lifetime by this plaintiff in his thirties.  The ALJ could

7  have decided otherwise, but there is substantial evidence, albeit contradicted, which supports the

8  decision.

9        Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the

10  Commissioner's Cross Motion for Summary Judgment is GRANTED.  The Clerk shall enter

11  judgment for the Commissioner.

12  DATED: 07/23/08

                       /s/ Gregory G. Hollows

13                     _____

                       GREGORY G. HOLLOWS

14                         U.S. MAGISTRATE JUDGE

GGH/076

15  Isaac0442.ss.wpd

16

17

18

19

20

21

22

23

24

25

26